512 So.2d 514 (1987)
Joseph A.R. VALLERE, Plaintiff-Appellee-Appellant,
v.
NICOR EXPLORATION COMPANY, Defendant-Appellee,
Dresser Industries, Inc., Intervenor-Appellant-Appellee.
No. 86-616.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1987.
*515 John Derosier and Bret Barham, Lake Charles, for plaintiff-appellee-appellant.
Blauche, Smith and Nieset, Allen Smith, Jr., Lake Charles, for defendant-appellee.
Stockwell, Sievert, Jeanne Sievert, Lake Charles, for intervenor-appellant-appellee.
Before DOMENGEAUX, LABORDE and YELVERTON, JJ.
DOMENGEAUX, Judge.
This proceeding arose as the result of an oilfield injury sustained by Joseph A.R. Vallere during the course of his employment with Dresser Industries, Inc. (Dresser). Vallere brought suit seeking damages for his losses against Nicor Drilling Company (Nicor), a drilling enterprise which had rented equipment from Vallere's employer, Dresser. Intervening in this action to recover worker's compensation benefits previously paid to Vallere and seeking a possible credit for future benefits is the plaintiff's employer, Dresser.
Subsequent to a trial by jury, judgment was rendered in favor of Vallere and *516 Dresser. The jury concluded that the plaintiff had established damages in the amount of $341,101.00. The jury also determined that Vallere was contributorily negligent, and assigned sixty percent of the responsibility for the accident to the plaintiff and forty percent to Nicor. Judgment was, thereafter, rendered for the plaintiff in the amount of $136,440.40, or forty percent of $341,101.00.
The court then rendered judgment in favor of Dresser and against Vallere and Nicor. Dresser was awarded $34,988.43. Dresser's award, which was to be paid by preference and priority from the judgment rendered in favor of Vallere represented forty percent of the total worker's compensation benefits Dresser had paid to Vallere.
On appeal, Vallere and Dresser have assigned errors. Vallere contends that: (1) the jury's assignment of fault is manifestly erroneous, and (2) the jury's determination of damages is inadequate. Dresser challenges: (1) the correctness of reducing its award by the percentage of negligence attributed to Vallere, and (2) the failure of the trial court to award a credit for future worker's compensation benefits.
Joseph A.R. Vallere was instructed by Darrell Trahan, a Dresser assistant supervisor, on December 1, 1983, to proceed to Nicor Rig No. 4 and "rig down" the Dresser equipment which had been leased to Nicor. When Vallere arrived at the drill site he proceeded to the toolpusher's shack and inquired whether Nicor desired to retain the Dresser equipment. The toolpusher informed Vallere that he was not sure whether Nicor would need the equipment on the next location and, thereafter, told Vallere to remove the equipment.
Vallere, subsequent to his conversation with the toolpusher, walked to the rig to inspect the Dresser equipment and prepare it for being transported. Upon reaching the rig which was in a state of being "rigged down," Vallere climbed the stairs to the rig floor and noticed that one piece of equipment, a sensor, was missing. The sensor in question was usually connected to a piece of equipment known as a "stand pipe" and was generally located above the rig floor so that the driller could take pressure readings during the drilling.
Vallere, unable to locate the sensor on the rig floor, returned to the ground and asked the rig supervisor about the missing sensor. The rig supervisor told Vallere that he did not know where it could be found but, suggested that he ask the toolpusher.
Returning once again to the toolpusher's shack, Vallere spoke with the toolpusher about the missing sensor. The toolpusher told the plaintiff that he also did not know where the sensor was and directed him to speak with the driller. Vallere then returned to the rig floor and spoke with an individual he believed to be the driller. This person, it was never established that he was the driller, told Vallere to look below the rig floor in the part of the rig known as the "substructure."
Vallere, on this advice, returned to the ground and attempted to locate the missing sensor under the substructure. Once under the rig, Vallere encountered ankle-deep water clouded by drilling fluids and dirt. Although boards covered a considerable area of the site, only a portion of the ground under the substructure was boarded.
After a short and unsuccessful search under the rig, Vallere looked through the rig floor and again asked the "driller" where the sensor might be found. The "driller" responded by circling his hand and again stating that the sensor could be found down below. Vallere then recommenced his search under the rig and almost immediately fell into what he later learned was the "kelly shuck hole."
A kelly shuck hole is a hole in the ground under the rig into which the kelly is partially lowered when it is not in use. The kelly is a nine to ten inch in diameter piece of equipment used to pump drilling fluids into the wellbore. Although the record inadequately describes the kelly shuck hole, it was apparently quite deep and considerably larger than the nine to ten inch kelly.
The plaintiff testified that when he fell into the hole, which was effectively concealed *517 by the dirty water under the rig, his shoulder "hooked" on the edge and that it took him approximately four to five minutes to extricate himself. During either the fall or his attempts to get out of the hole he got water in his eyes and mouth. After climbing out of the hole, Vallere laid in the water to catch his breath. He then left the site to eat lunch and warm-up, after which he returned and completed his assignment.
The initial specification of error address the jury's conclusion that Vallere was sixty percent contributorily negligent and Nicor was forty percent negligent. Vallere contends that he in no respects contributed to his misfortune. Although we decline to completely agree with the plaintiff, we do believe that the jury was manifestly erroneous in attributing sixty percent of the fault for the accident to the plaintiff. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
The Louisiana Supreme Court in Watson v. State Farm Fire & Casualty Insurance Co., 469 So.2d 967 (La.1985), noting the absence of standards in the Civil Code for apportioning fault, used Watson as an opportunity to establish guidelines. The Court, relying on the Uniform Comparative Fault Act as drafted by the National Conference of Commissioners on Uniform State Laws, held that a trier of fact, when confronted with a comparative fault determination, should consider "the nature of the conduct of each party at fault and the extent of causal relation between the conduct and the damages claimed." Id. at 974. The court further stated,
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertance or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed with haste, without proper thought. Id. at 974.
Upon review of the facts of the instant case under the light of Watson, we hold that fault should be apportioned: forty percent to Vallere, and sixty percent to Nicor.
The evidence indicates that at the time of the accident Vallere was thirty-four years old and held a graduate equivalency degree. He had been an employee of Dresser for approximately three and one-half years, initially working as a shophand cleaning and painting equipment but, ultimately being promoted to the position he held at the time of the accident, that of serviceman classification three. Vallere had been a serviceman for approximately two years prior to the accident and worked primarily onshore. Although he had worked for Schlumberger for about two years before going to work for Dresser, his position was that of a wireline operator's helper and he worked entirely offshore.
Vallere, as a serviceman for Dresser, was responsible for "rigging up," servicing and "rigging down" the equipment Dresser leased to drilling companies. The equipment, although not thoroughly detailed in the record, was part of the blowout prevention system used during drilling.
At the time of his fall, Vallere was searching for a sensing device that was approximately eight to ten inches long and three inches in diameter. This device was ordinarily attached by screws to the stand pipe.
The stand pipe is a part of the equipment which enables the driller to pump drilling fluids into the wellbore. Testimony indicates that the stand pipe always runs perpendicular to the ground, protruding partially above and partially below the rig floor. Despite contrary testimony by the plaintiff, the evidence indicates that the stand pipe is straight because other shapes would impede the flow of drilling fluids. Testimony further established that the missing sensor was attached eight out of ten times to that portion of the stand pipe which protruded above the rig floor.
When the plaintiff began to search the substructure of the rig he found the area covered by cloudy ankle-deep water and *518 only partially boarded. The kelly shuck hole was, therefore, not visible.
The plaintiff, although he had worked as a serviceman for two years, testified that he did not know what a kelly shuck hole was. Whether or not the plaintiff was aware of the hole, we believe he should have been sufficiently knowledgable to at least know that hidden dangers are present on all drilling sites and that when working around unfamiliar areas he should proceed with great caution.
Further testimony regarding kelly shuck holes in general indicated that it was not uncommon for workers to fall in them, even when they were not obscured by water. It was also established that the Nicor hole was not marked.
It is for the above reasons that we believe the plaintiff to have been contributorily negligent to the extent of only forty percent and that Nicor, rather than Vallere, was sixty percent at fault.
Vallere's second assignment of error contends that the trier of fact erred in concluding that he only sustained damages amounting to $341,101.00. Pursuant to La. Civ.Code. art. 1999 (1985) (formerly 1934 (3) (1870)) and the interpreting jurisprudence, an appellate court should only disturb a quantum determination upon a clear showing that the trier of fact abused its very broad discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and Mart v. Hill, 505 So.2d 1120 (La.1987). We have reviewed the record and do not believe that the jury abused its discretion.
The jury, without considering the percentage of negligence attributable to the plaintiff, concluded that the following amounts would adequately compensate Vallere:

Medical expenses, past, present and
future ............................. $61,501.00
Past loss of earnings............... $64,000.00
Loss of future earnings or dimunition
of earnings capacity................ $115,000.00
Mental and physical pain and suffering
and disability, past, present, and
future ............................. $100,000.00
 ___________
Total Damages ...................... $341,101.00

The amount awarded the plaintiff for medical expenses, $61,501.00, was stipulated to by the parties and is not in dispute.
The amount awarded the plaintiff for past loss of earnings was $64,000.00. The jury apparently arrived at this figure by averaging the plaintiff's 1981, 1982 and 1983 salaries and then multiplied that figure by the amount of time from the accident, December 1983, until the date of the trial, February 1986. The figure then arrived at, $63,630.00, was rounded off to $64,000.00. We cannot find fault with this conclusion, particularly when one considers the evidence that by the time of trial Dresser's work force had been reduced by forty percent and there were no guarantees that the plaintiff would not have been part of that number.
The plaintiff was awarded $115,000.00 for loss of future earnings or dimunition of earnings capacity. A review of this figure leads us to the conclusion that the plaintiff was awarded approximately four times the average of his 1981, 1982 and 1983 salaries. The jury, apparently concluded that the award would enable the plaintiff to sustain his standard of living for the duration of his anticipated four year college Bible study program, and that he would thereafter possess new skills with which he could support his family.
Lastly, the plaintiff was awarded $100,000.00 for mental and physical pain and suffering, and disability past, present and future. The evidence established that the plaintiff underwent four operations as the result of his accident. The testimony of his doctors established that his upper body was twenty-five percent disabled and that the injuries to his lower back also disabled him approximately twenty-five percent. Testimony addressing the plaintiff's total physical condition indicated that he was disabled approximately forty percent and that he would be required to avoid manual labor involving considerable crawling, lifting, or repetition. The evidence also established that the accident created family difficulties which resulted from the plaintiff's anxiety and depression over his injuries. We do not believe that the jury *519 abused its discretion in awarding the plaintiff $100,000.00 for his mental and physical pain and suffering and disability.
For the above reasons, and in consideration of our resolution of Vallere's initial assignment of error, we will amend the judgment of the district court to increase the plaintiff's recovery from $136,440.40 to $204,660.60.
Dresser's first assignment of error questions the correctness of the district court decision reducing its award for previously paid worker's compensation benefits by the percentage of negligence attributed to its employee, Vallere. The trial court reduced Dresser's award apparently relying on La. R.S. 23:1101, as amended by Acts 1985, No. 931, § 1. We believe the trial court erred.
La.R.S. 23:1101, as amended by Acts 1976, No. 147, § 2, and in effect at the time of the plaintiff's accident, provided in part:
Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which has been paid or become obligated to pay as compensation to such employee or his dependents. (emphasis added).
This version of R.S. 23:1101 entitles the worker's compensation carrier to reimbursement for all benefits paid. The percentage of negligence attributable to the injured employee is not taken into consideration. Although the 1985 amendment to R.S. 23:1101 does consider the negligence of the employee for reimbursement purposes, we believe that the amendment is substantive in nature and should not be applied retroactively. Gadman v. State, Through Department of Transportation and Development, 493 So.2d 661 (La.App. 2nd Cir.1986). See also, Rico v. Vangundy, 461 So.2d 458 (La.App. 5th Cir.1984). We respectfully disagree with the decision of our Bretheren on the First Circuit in Scott v. Barclay's American Leasing Service, Inc., 506 So.2d 823 (La.App. 1st Cir. 1987). Dresser is, therefore, entitled to recover $36,900.60 in medical benefits which represents one hundred percent of the plaintiff's recovery for medical expenses and $25,970.00 for worker's compensation benefits paid by Dresser up to the time of the trial.
Dresser's second assignment of error alleges that the district court erred in failing to award Dresser a credit against future liability for worker's compensation benefits in an amount equal to the excess of the plaintiff's recovery over Dresser's previously paid benefits, plus six percent per annum. Dresser, in raising this issue, relies upon La.R.S. 23:1103 (1958). R.S. 23:1103 provides, in pertinent part,
if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the compensation due, computed at six percent per annum, shall be satisfied by such payment.
In accordance with the express language of R.S. 23:1103, Dresser is entitled to an equitable credit against liability for future worker's compensation benefits computed at six percent per annum. Fontenot v. Hanover Insurance Company, 385 So.2d 238 (La.1980); Derouselle v. Konecny, 468 So.2d 1382 (La.App. 1st Cir.1985). Dresser is, therefore, entitled to a credit in the amount of $69,000.00 plus six percent per annum on the unexhausted balance until the entire credit is so exhausted.
For the above and foregoing reasons the decision of the district court in favor of Joseph A.R. Vallere and Dresser Industries, Inc. is affirmed in part, amended in part, reversed in part and recast as follows:
Judgment is rendered in favor of Joseph A.R. Vallere and against Nicor Drilling Company in the full sum of $204,660.60, itemized as follows:

Medical expenses, past, present and
future ............................. $36,900.60
Past loss of earnings............... $38,400.00
Loss of future earnings or diminution
of earning capacity................. $69,000.00
Mental and physical pain and suffering
and disability, past, present and
future ............................. $60,000.00

*520 Judgment is further rendered in favor of Dresser Industries, Inc. and against Joseph A.R. Vallere and Nicor Drilling Company, in the amount of $62,870.60, plus legal interest, itemized as: $36,900.60, for medical benefits, and $25,970.00, for worker's compensation benefits, which award is to be paid by preference and priority from the sum above awarded Joseph A.R. Valere.
Judgment is further rendered in favor of Dresser Industries, Inc. and against Joseph A.R. Vallere, awarding the intervenor a credit against liability for future worker's compensation benefits in the amount of $69,000.00, plus interest at the rate of six percent per annum on the unexhausted balance until the entire balance is exhausted.
All costs of the trial court proceedings are assessed against Nicor Drilling Company; the expert witness fees are set as follows:

Dr. Gilles R. Morin $500.00
Dr. Clark A. Gunderson $500.00
Dr. Lynn E. Foret $500.00
Dr. William F. Foster $500.00
Mr. Jeffrey J. Peterson $250.00
(Rehabilitation specialist)
Mr. Donald Cornwell $250.00
(Economist)

All costs of this appeal are divided equally between Joseph A.R. Vallere and Nicor Drilling Company.
It is finally Ordered that the sum awarded the plaintiff bear interest at the rate of twelve percent per annum from the date of judicial demand until paid.
AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART, AND RENDERED.