540 So.2d 1068 (1989)
Earl THOMAS
v.
The HARTFORD INSURANCE COMPANY and Terrebonne Parish Police Jury.
Nos. CA 87 1340, CA 87 1544.
Court of Appeal of Louisiana, First Circuit.
February 28, 1989.
Writ Denied April 28, 1989.
*1069 Gordon Hackman, Boutte, for plaintiff and appellant, Earl Thomas.
James C. Cockfield, Metairie, for defendant and appellee, Hartford Ins. Co.
Coleman T. Organ, Metairie, for Terrebonne Parish Consol. Gov. and South State Ins. Co., Intervenor.
Before CARTER, LANIER and LEBLANC, JJ.
LANIER, Judge.
This action has cumulated causes of action in tort and workers' compensation. The tort cause of action asserts a claim for damages arising out of a vehicular collision, wherein a vehicle being driven by the plaintiff and another vehicle struck each other. The plaintiff's wife asserts a claim of loss of consortium therein. Made defendants are the employer of the driver of the vehicle which struck the vehicle being driven by the plaintiff and the employer's insurer. The workers' compensation cause of action seeks workers' compensation benefits and statutory penalties from the plaintiff's employer and its insurer. The plaintiff's employer's insurer intervened in the tort cause of action for reimbursement of all medical and benefit payments made to the plaintiff. The trial court found that (1) the accident was caused by the concurrent fault of both drivers; (2) the fault of each driver was 50%; (3) the plaintiff had tort damages of $40,000 in general damages, $3,864.42 in past medical expenses, no future medical expenses, loss of wages of $5,488 (20 weeks at $274.40), for a total of $49,352.21, which was reduced by 50% to $24,676.21; (4) the wife had loss of consortium damages of $5,000, which was reduced by 50% to $2,500; (5) the plaintiff was not disabled, he had received all payments due to him for workers' compensation, and his cause of action for workers' compensation was dismissed with prejudice; and (6) the intervenor was entitled to recover $6,231.85, which was reduced by 50% to $3,115.92. The attorney for the plaintiff filed a motion in the tort cause of action requesting the trial court to fix an attorney fee for him for the intervenor's proportionate share of his attorney fee, citing Moody v. Arabie, 498 So.2d 1081 (La.1986); the trial court denied this motion. The plaintiff and the intervenor appealed devolutively.[1]

FACTS
On June 28, 1983, at approximately 10:30 a.m., the plaintiff, Earl Thomas, was driving a dump truck owned by his employer, the Terrebonne Parish Consolidated Government (formerly the Terrebonne Parish Police Jury) (Terrebonne), away from the Radcliff Materials yard on Country *1070 Club Drive in Terrebonne Parish, Louisiana. Country Club Drive is a narrow two-lane road with a marked centerline and narrow shoulders. Alcide Chaisson was a guest passenger in Thomas' vehicle. At this same time and place, Audrey Folse was driving a dump truck owned by her employer, the Lafourche Parish Council (formerly the Lafourche Parish Police Jury) (Lafourche), toward the Radcliff Materials yard on Country Club Drive when the side mirrors of the two trucks struck each other. The broken glass from the side mirror on Thomas' truck came through the open window of the truck, got into Thomas' left eye and caused him to jerk his neck to the right. The sudden jerking motion caused Thomas to experience pain. At this time, the Hartford Accident and Indemnity Company (Hartford) was Lafourche's liability insurer and South State Insurance Company (South)[2] was the workers' compensation insurer for Terrebonne.
Thomas was unable to continue working and his wife, Beverly E. Thomas, came and got him and brought him to the Terrebonne General Hospital (Hospital). Thomas complained of pain in his neck, headache and pain in the corner of his eye. Thomas' eye was examined by Dr. James F. Bourgeois, an ophthalmologist. Dr. Bourgeois diagnosed Thomas' eye condition as a conjunctival abrasion (scratch on tissue surrounding the eye) of the left eye. He treated it with ophthalmic solution. Thomas was diagnosed as having a left cervical strain by Hospital staff doctors. He was given a shot for pain and released.
On July 1, 1983, Thomas saw Dr. Chris Cenac, an orthopedic surgeon. Dr. Cenac examined Thomas and diagnosed his neck problem as acute cervical strain. He treated this condition with physical therapy[3], anti-inflammatory medications and analgesics. Thomas returned to Dr. Cenac on July 19 and 29, 1983, complaining of pain and numbness in his left arm. On August 4, 1983, EMG and nerve conduction studies were performed on Thomas. They revealed possible cervical, nerve root irritation at the C-6, C-7 and C-8 levels. Thomas saw Dr. Cenac on August 8 and 29, 1983, and his complaints persisted. Dr. Cenac, referred Thomas to Dr. Donald J. Judice, a neurosurgeon.
Dr. Judice first saw Thomas on August 31, 1983. Thomas complained of pain in his neck, pain down the left arm and numbness in the inferior part of the left arm. Dr. Judice examined Thomas and felt he had a herniated[4] cervical disc with a left cervical radiculopathy. Thomas was admitted to the Hospital on September 8, 1983, for diagnostic testing, which included a myelogram. The myelogram showed an enlarged nerve root on the left at C-6, but a herniated disc was not detected. Thomas was discharged from the Hospital on September 10, 1983, with a diagnosis of cervical nerve root stretchentary. Conservative therapy was continued, and he was given Percodan for pain. Dr. Judice next saw Thomas on October 14, 1983. Thomas had the same complaints, and conservative treatment was continued. Dr. Judice saw Thomas on November 7, 1983, and he was much improved. Dr. Judice released Thomas to go back to work on November 14, 1983, with no restrictions. Dr. Judice felt no further medical therapy was needed. Thomas was instructed to return on an "as needed basis only." Dr. Judice did not attribute any residual disability to Thomas.
At the trial, the parties stipulated that South paid $3,280.38 in compensation benefits to Thomas through November 14, 1983, and paid $2,942.29 in medical expenses for Thomas. These payments total $6,222.67.[5]
*1071 This suit was filed on June 28, 1984.
Thomas testified that, in October of 1984, he was hauling tree branches in his dump truck, some branches got caught in the tailgate of the truck, and he had to pull them out. That night his neck and arm started bothering him, and he took Tylenol to go to sleep. The next day, he still had pain, so he notified his boss. Althea Blanchard testified she was a clerk in Terrebonne's Drainage Department (where Thomas worked), and the department's records showed Thomas missed work on October 3, 1984, to go to the doctor "because his arm and neck were hurting." Earl Fischer, Terrebonne's insurance manager, testified that Terrebonne had an accident report on Thomas for October 2, 1984. This report was forwarded to Terrebonne's insurer.[6] The evidence is unclear about whether or not Thomas saw Dr. Judice at this time.
Thomas returned to see Dr. Judice on March 18, 1985, complaining of increased pain in his neck and left arm. Dr. Judice had a CAT scan performed on April 1, 1985. Dr. Judice sent a report to South's attorneys on April 3, 1985, which advised, in pertinent part, as follows:
I obtained a CAT scan of his cervical spine, and it showed a 1mm bulging disc at the C5-6 level and a 1mm bone spur at the C6-7 level. I did not feel that either of these was a surgically significant lesion, and since the patient had been able to work all along, I did not see any reason why he should not be able to return to full duty with no restrictions. I think his prognosis is excellent, I do not feel that he has suffered a major injury to his disc or to his nerve roots. He is released from my care to full duty and I do not feel that he needs any further medical therapy at this point. However, should his condition worsen, this may change at sometime in the future. I do not have a return appointment scheduled for him at this time.
On that same date, Dr. Judice sent a report to Dr. Cenac which advised as follows:
I saw Earl Thomas in my office recently for a complaint of neck and arm pain. He states that this had recurred after being asymptomatic for awhile. His examination is unremarkable at that time. I obtained a CAT scan of his cervical spine, and this showed only a 1mm bulging disc and bone spur, it does not show a major disc injury or disc herniation. He has been able to continue to [sic] his job as a heavy equipment operator for Terrebonne Parish Police Jury, and he has not had any undue difficulty with this. I think he just has some mild degenerative disc disease in his cervical spine and I think there is no reason he can not continue his employment. I plan to see him on an as needed basis, he is given no regular scheduled appointment.
Dr. Judice testified that one millimeter is approximately 1/25 of an inch.
Dr. Judice saw Thomas again on July 30, 1985, and sent Dr. Cenac the following report:
I saw Earl Thomas in my office today in re-evaluation. He came in for a check-up. He is examined today. His cervical spine is supple and his neurological examination is normal. I do know that he has 1mm bulging disc, but I do not think that it is large enough to warrant a myelogram or any more aggressive therapy. He is to continue his neck exercises, and is to return on an as needed basis.
Thomas went back to Dr. Judice on September 24, 1985, complaining of neck pain and headaches. Dr. Judice issued a report to Thomas' attorney on that date which stated, in part, as follows:

*1072 Also with time these disc tend to worsen. I do know that he has bone spur formation in his neck at this time, and I predict that this will continue to get worse with time. I will continue to follow him along as long as he is symptomatic.
The first day of the trial of this case was held on October 15, 1985.
Thomas saw Dr. Judice on November 22, 1985. Dr. Judice reported this visit as follows:
Earl Thomas comes to the office today complaining of neck pain. He states that it was quite severe last week, but then he has been having to work very hard lately because of the damage done by the storm [Hurricane Juan]. I am giving him a prescription for 40 Fiorgesics, he is to continue his neck exercises, and to continue to stay as active as he can, and return to see me in six weeks for re-evaluation.
Fiorgesics is a pain reliever, a mild sedative and a muscle relaxant. Thomas saw Dr. Judice for the last time on January 10, 1986, and Dr. Judice rendered the following report:
Earl Thomas comes to the office today stating that he is still having neck pain and headaches. He states that his head is hurting so bad at one time, he thought he had a brain tumor. He is still complaining of neck pain, and pain down into his shoulders. I do know that he has two bulging disc on CAT scan but we are trying to treat him in a conservative fashion. At sometime in the future he will probably require surgery.
The second (and last) day of the trial of this case was on February 24, 1986.
At the time of the last day of the trial, Thomas was still working for Terrebonne for the same salary but was working as a mechanic's helper. Thomas testified his work was changed at his own request because driving a truck caused him problems with his neck. Richard Battise, a Terrebonne drainage superintendent, testified Thomas was a good worker, the parish was short on trucks, a good mechanic's helper was needed so Thomas was tranferred, and the change was not related to the 1983 accident.

I. TORT CAUSE OF ACTION

A. ALLOCATION OF FAULT

(Thomas Assignment of Error No. 1)
Thomas asserts the trial court "erred in failing to find the accident was caused solely by Audrey Folse." Lafourche and Hartford respond that the trial court "was not unreasonable in further concluding that Mr. Thomas was guilty of negligence in causing the accident, whose negligence was established by the court to be fifty percent."
Thomas testified Folse drove her vehicle in his lane of travel, he pulled toward the shoulder to avoid her but was unable to get out of her way, and the side mirrors of the two vehicles struck each other. Folse testified she was in her proper lane of travel, there was a hole (or a dip) in Thomas' side of the road, Thomas' vehicle came on her side of the road and struck her mirror. Alcide Chaisson, the passenger in Thomas' vehicle, testified Thomas was in his lane of travel, Folse's truck was too close to Thomas' truck, Thomas pulled his truck almost to the side of the road, Thomas' truck was one-half foot from the centerline prior to the accident, and he did not see Folse's vehicle cross the centerline.
The trial court evaluated this evidence as follows:
The evidence presented at the trial of this matter was inconclusive as to whether either driver actually crossed the center lane of this narrow and poorly maintained roadway. However, this Court finds it more probable than not that both drivers were traveling too close to the center line. But for the carelessness on the part of both drivers, the side-swiping of the vehicles would not have occurred. The two drivers are equally at fault in causing the accident.
The trier of fact's reasonable evaluation of credibility should not be disturbed on appeal in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The trier of fact's findings as to *1073 percentages of fault is factual, and such determination will not be disturbed on appeal unless it is clearly wrong. Stein v. Langer, 515 So.2d 507 (La.App. 1st Cir. 1987); Anderson v. Rabb, 484 So.2d 196 (La.App. 1st Cir.), writ denied, 489 So.2d 248 (La.1986).
The trial court apparently found the testimony of Chaisson the most credible. Such a conclusion is not manifestly erroneous.
This assignment of error is without merit.

B. QUANTUM

1. General Damages

(Thomas Assignment of Error No. 2)
Thomas asserts "[a]warding only $40,000 for such a substantial injury is clear error." Lafourche and Hartford respond that "the Judgment of the lower court ought not be raised" because Thomas has returned to work and is not disabled.
A trial court has much discretion in fixing a quantum award for general damages. La.C.C. art. 2324.1. The trial court's general damage award will not be set aside unless there was an abuse of that much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
After reviewing all of the pertinent evidence, we conclude the trial court did not abuse its discretion with the $40,000 general damage award. See, for example, Foab v. New Orleans Public Service, Inc., 471 So.2d 295 (La.App. 4th Cir.), writ denied, 475 So.2d 362 (La.1985); Maxwell v. Gibson, 421 So.2d 1175 (La.App. 2nd Cir.1982), writ denied, 426 So.2d 179 (La.1983); Wexler v. Martin, 367 So.2d 111 (La.App. 4th Cir.), writ denied, 369 So.2d 1352 (La.1979).
This assignment of error is without merit.

2. Past Loss of Wages

(Thomas Assignment of Error No. 3)
Thomas asserts he was unable to work from June 28, 1983, until November 14, 1983, and that his loss of wages for this period was $6,048, rather than the $5,488 fixed by the trial court. Thomas does not assert why the trial court's calculation is wrong.
The evidence shows Thomas made $6.86 per hour and worked a 40 hour week and, thus, had a weekly salary of $274.40. It is 141 days (20 weeks) from June 28, 1983, until November 14, 1983. Thomas' past loss of wages was correctly fixed at $5,488.
This assignment of error is without merit.

3. Future Loss of Wages and Medical Expenses

(Thomas Assignment of Error No. 3)
Thomas contends the trial court committed error by denying his claims for loss of future wages and for future medical expenses. He asserts that since Dr. Judice testified he would need future surgery at a cost of $8,000 to $10,000 which would disable him from three to six months that he is entitled to recover for future medical expenses and future loss of wages. The trial court denied these claims as "too speculative."
Dr. Judice gave the following pertinent testimony concerning these elements of damage:
Q If Thomas does require surgery, is there any way for you to predict within how many months or years that might be?
A No, the general guidelines I use in advising people on that is if they have to work very hard or have to do very heavy labor, then they're going to accelerate an already advanced arthritic process and it's going to be sooner. If they can go to a more sedentary-type of work such as a dispatcher, or a salesperson, or telephone answer-type situation and take good care of their neck with no more trauma, then they may be able to put it off many years.
Q What would be the cost of that surgery today considering both fees for the surgeons, I mean assistants you might require, as well as for the hospital?
*1074 A If both levels were done at the same time at present cost, it would be approximatelyand he had a very smooth courseit would be approximately eight to ten thousand dollars.
Q And what kind of time off any kind of work would that involve?
A A minimum of three months to go back to light duty; six months to full unlimited duty within restrictions that are set.
. . . .
Q Doctor I gather from your testimony today that you haven't scheduled Mr. Thomas for an operation?
A No, I have not.
Q I gather also from your testimony that you haven't decided in your mind he will actually need one?
A Not at this time I do not think he needs an operation.
Q So the only restrictions you would place on Mr. Thomas at this time would be not to lift more than fifty pounds?
A No prolonged sitting, standing, or walking; not to work in the extremes of temperature and by that I mean very hot or very cold; not to work in unusual positions such as lying under a pipe trying to weld or draped over the hood of a car.
Q When did you give him those restrictions?
A Those again are the general restrictions I give my patients for neck or back problems.
. . . .
Q Doesn't the report further go on to say that you think he just has mild degenerative difficultyI'm sorryI think he has some mild degenerative disc disease in the cervical spine and I think there is no reason he can't continue his employment?
A Correct.
. . . .
Q Is it fair to say that with the kind of injury you observed and talked to us about with Thomas, that he will have good days and bad days?
A That is correct.
Q And he will have exascerbation of complaints, exascerbation of symptoms with activity level increases?
A That's correct.
Q And finally, is it your opinion that more likely than not he will at sometime in the future require surgery?
A Yes, I think so because his radiographic findings have changed from 1983 to 1985 which means that's been a progression of the process.
Thomas gave the following testimony about the advice given to him on future surgery by Dr. Judice:
Q Has Dr. Judice covered with you the possibility that you might need surgery for your condition?
A Yes sir, he told me in the future surgery might be necessary.
Q Have you made a decision on having that surgery?
A No sir, I haven't.
Q What are your plans, if any?
A Well my plans is to try to hold out. If the doctor would tell me that surgery would really be necessary, I would go on and have the surgery. But until he do, I'm undecided right now.
MR. HACKMAN: I tender the witness Your Honor.

CROSS EXAMINATION
BY MR. COCKFIELD:
Q Mr. Thomas it's your testimony that you don't want surgery unless the doctor says it's necessary?
A Yes sir.
Q So he hasn't told you that it's necessary yet, has he?
A He said maybe in the future, you know, further on down the road it may take surgery to solve my problem with my neck.
Q He didn't say absolutely you'll need an operation?
A No sir.
A plaintiff bears the burden of proving the causal nexus between an accident and his injury (damage) by a preponderance of *1075 the evidence. Wells v. Allstate Insurance Company, 510 So.2d 763 (La.App. 1st Cir.), writ denied, 514 So.2d 463 (La.1987). A tort-feasor is only liable for damages caused by his negligent act; he is not liable for damages caused by separate, independent or intervening causes of damage. Swan v. Vernon Milling Company, 517 So.2d 1161 (La.App. 3rd Cir.1987), writ denied, 521 So.2d 1171 (La.1988). The plaintiff has the burden of proving that his injuries were not the result of separate, independent and intervening causes. Knight v. Miller, 503 So.2d 120 (La.App. 5th Cir.1987); Foret v. United Services Automobile Association, 293 So.2d 671 (La.App. 1st Cir.1974).
On November 7, 1983, Dr. Judice released Thomas to go back to work on November 14, 1983, with no restrictions on the type of work he could do. At that time, Dr. Judice felt no further medical therapy was needed. Thomas apparently did his work satisfactorily and required no medical treatment until on or about October 2, 1984, almost eleven months later. At that time, Thomas apparently aggravated his neck condition doing strenuous work on his job. In his April 3, 1985 report to Dr. Cenac, Dr. Judice observed, in part, that Thomas "just had some mild degenerative disc disease in his cervical spine." The testimony at the trial is ambivalent about relating the incident of October 2, 1984, and the mild degenerative disc disease with the June 28, 1983 accident. See, for example, Waggoner v. Marquette Casualty Company, 181 So.2d 475 (La.App. 2nd Cir. 1965).
The last day of trial was held on February 24, 1986, which was two years and eight months after the accident. At that time, Dr. Judice had no immediate plans for surgery for Thomas and was unable to predict when in the future surgery might be necessary. Dr. Judice was not questioned about the causal relationship between the accident, the incident of October 1984, the mild degenerative disc disease and the future surgery. In this factual posture, we cannot say that the trial court's finding that the future surgery was "too speculative" to justify a damage award was manifestly erroneous. See, for example, Danna v. Howard Griffin, Inc., 388 So.2d 446 (La.App. 2nd Cir.1980). If an award for future medical expenses is "too speculative," then an award of loss of future wages due to disability caused by future surgery is also "too speculative."
This assignment of error is without merit.

4. Mrs. Thomas' Award for Loss of Consortium

(Thomas Assignment of Error No. 7)
Mrs. Thomas contends her $5,000 award for loss of consortium is inadequate and the award should be raised to $25,000.
Mrs. Thomas testified that since the accident Mr. Thomas does not do heavy work around the house like cutting the grass. He does not take out the garbage or play softball. He does not help with the housework like he used to and he does not wash cars. He gets "grouchy" and does not go to PTA meetings like he used to. She also testified their sex life decreased "awhole [sic] deal." Mr. Thomas testified he does not play with the children, go to church, or visit relatives like he used to. He also testified his sex life was reduced.
In Lonthier v. Northwest Insurance Company, 497 So.2d 774, 775-776 (La.App. 3rd Cir.1986), appears the following:
The compensable elements of damage in a loss of consortium claim are loss of society, sex, and service and support. See LSA-C.C. 2315(B).... "Society" is broader than loss of sexual relations. It includes general love, companionship, and affection that the spouse loses as a result of the injury. "Support" is the lost family income that would go to support the uninjured spouse. "Service" is the uncompensated work around the house or educational help with the children which presumably will, as a result of the injury, have to be obtained from another source and at a price.
Whether a party is entitled to damages or not is an issue of fact to be decided by the trier of fact. A finding of fact cannot *1076 be overturned on appeal absent a showing of manifest error.
[Citations omitted.]
Although Mr. and Mrs. Thomas testified that Mr. Thomas did not do several things like he used to, the evidence showed he continued to work full time for Terrebonne as a dump truck driver and a mechanic's helper. No evidence was presented to show that Mrs. Thomas had to hire extra help to substitute for work no longer done by Mr. Thomas around the house. Mrs. Thomas did not testify that she had lost any love, affection or companionship as a result of the accident. Considering all of the evidence, we cannot say that the award of $5,000 herein is an abuse of discretion. See, for example, Finley v. Bass, 478 So.2d 608 (La.App. 2nd Cir.1985).
This assignment of error is without merit.
C. REDUCTION OF A SPOUSE'S LOSS OF CONSORTIUM AWARD FOR THE OTHER SPOUSE'S COMPARATIVE NEGLIGENCE

(Thomas Assignment of Error No. 7)
Mrs. Thomas contends the trial court committed error for reduction of her loss of consortium award.
By Acts 1982, No. 202, La.C.C. art. 2315 was amended to read as follows:
Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. [Emphasis added.]
This legislation created a new cause of action for loss of consortium which was available to those persons who also qualified as beneficiaries of the wrongful death cause of action. Lee v. K-Mart Corporation, 483 So.2d 609 (La.App. 1st Cir.1985), writ denied, 484 So.2d 661 (La.1986). This cause of action is analogous to the wrongful death cause of action because it grants to designated beneficiaries the right to recover damages from a tort-feasor if a person with a relationship to the beneficiary is injured by the tort. Cf. Owens v. Martin, 430 So.2d 1248 (La.App. 1st Cir.1983), affirmed on other grounds, 449 So.2d 448 (La.1984).
Prior to the advent of comparative negligence, the courts held that a wrongful death beneficiary could not recover damages when the beneficiary's decedent was contributorily negligent, in whole or in part, in causing his own demise. Callais v. Allstate Insurance Company, 334 So.2d 692 (La.1976) (on rehearing); Vitale v. Checker Cab Co., 166 La. 527, 117 So. 579 (1928). The courts made a policy determination that the duty to drive one's automobile with due care to protect other persons and property on or near a highway did not include within the ambit of its protection the risk that the driver's wrongful death beneficiary would be harmed when the driver's negligence contributed to his own death (and thus harmed the beneficiary). Olinde v. American Employers Insurance Company, 376 So.2d 1027 (La.App. 1st Cir. 1979); H. Johnson, Death on the Callais Coach: The Mystery of Louisiana Wrongful Death and Survival Actions, 37 La.L. Rev. 1, 41-46 (1976). With the advent of comparative negligence, the duty of general care for others was expanded to cover the risk that wrongful death beneficiaries would be harmed by the contributing fault of the decedent, and such beneficiaries were allowed to recover damages, notwithstanding the decedent's fault. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985).[7] Further, a *1077 policy determination also was made that the portion of fault assigned to the decedent would reduce the award of a beneficiary by the amount assigned. Watson, 469 So.2d at 974.[8]See, also, Hellmers v. Department of Transportation and Development, 503 So.2d 174 (La.App. 4th Cir.), writ denied, 505 So.2d 1141, 1149 (La.1987).
Because the cause of action for loss of consortium flows in favor of the same persons who are the beneficiaries of the wrongful death cause of action, there is a direct analogy between the two causes of action. Accordingly, it has been held that the comparative negligence of a decedent reduces the award of a beneficiary on the loss of consortium cause of action. Cascio v. City of Monroe, 530 So.2d 1170 (La.App. 2nd Cir.1988).[9]
Mrs. Thomas asserts that comparative negligence is an affirmative defense (La.C. C.P. art. 1005) and that "Hartford and Lafourche Parish never claimed, in answers or other pleadings, the special defense for reduction of Beverly Thomas's [sic] damages on account of Earl Thomas's [sic] negligence." Mr. and Mrs. Thomas were both plaintiffs in this case. The answer filed by Hartford[10] to the plaintiffs' petition pleads the following:

III.
Alternatively, if this Honorable Court finds that Audrey M. Folse was guilty of negligence, which negligence is a proximate cause of the accident sued on herein, and further, if this Honorable Court finds that the Lafourche Parish Council is vicariously liable for the negligence of Audrey M. Folse, then in that event, the defendant, The Hartford, avers that the plaintiff is guilty of contributory negligence and/or comparative negligence and/or assumption of risk which mitigates and/or bars the recovery therein in the following illustrative but non-exclusive ways, to-wit:
(a) Failing to see what he should have seen;
(b) Driving on the wrong side of the road;

*1078 (c) Driving at an excessive rate of speed for the conditions prevailing;
(d) Any and all other acts of negligence which may be proven at the time of trial.
These allegations assert the affirmative defense of comparative negligence. A liberal and reasonable construction of these allegations indicates this defense has been raised against both plaintiffs.
This assignment of error is without merit.
D. REDUCTION OF INTERVENOR'S (SOUTH) AWARD FOR THE COMPARATIVE NEGLIGENCE OF THE WORKERS' COMPENSATION CLAIMANT (THOMAS)

(South's Assignment of Error No. 1)
South contends the trial court committed error by reducing its award for workers' compensation benefits and medical expenses paid by the 50% amount of Thomas' comparative negligence, citing Vallere v. Nicor Exploration Company, 512 So.2d 514 (La.App. 3rd Cir.1987) and Gadman v. State, Department of Transportation and Development, 493 So.2d 661 (La.App. 2nd Cir.1986).
La.R.S. 23:1101 gives an employer the authority to assert the cause of action that his injured employee has against a third person whose tort caused injury to the employee during the course and scope of the employment; the employer may recover the workers' compensation payments he is required to pay out of the employee's damage award. Vidrine v. Michigan Millers Mutual Insurance Company, 263 La. 300, 268 So.2d 233, 245 (1972) (on rehearing). The legal relationship between the employer, employee and the employee's tort cause of action is discussed in Moody v. Arabie, 498 So.2d 1081, 1084-1085 (La. 1986), as follows:
When a worker is injured during the course and scope of his employment by the offense or quasi offense of a third person, the worker's right to recover damages from the third person is a property right and the employer's payment of workers' compensation does not deprive the injured worker of his action against the third person. La.C.C. art. 2315; La. R.S. 23:1101. However, an employer who is obliged to pay compensation to the worker in such a case may sue the third person for reimbursement of the compensation obligation. La.R.S. 23:1102(B). When either the worker or the employer sues the third person he must notify the other of the pending suit, and the other may intervene as party plaintiff. La.R.S. 23:1102(A). In the event a suit is filed by either the worker or the employer, and damages are recovered, damages shall be apportioned so that the employer's claim for compensation paid shall take precedence over that of the worker, but if the damages are more than sufficient to reimburse the employer, the excess shall be assessed in favor of the worker. La.R.S. 23:1103. When an excess in damages is paid to the worker the employer is entitled to a credit of such amount against compensation it will become obligated to pay in the future. La.R.S. 23:1103.
. . . .
When an employer pays compensation to a worker who has been injured by the wrongful act of a third person, the employer and the worker become co-owners of a property right consisting of a right to recover damages from the third person. Since the Civil Code has not dealt in detail with co-ownership of single things, the task to construct a doctrine has fallen to the writers, using as help the statutory principles furnished by the titles on ownership, successions, and partnership contract....
The interests of co-owners do not represent distinct material units. Therefore none of them can exercise without the consent of the other co-owners any physical or legal acts aimed at the whole or even the smallest specific portion of the thing, if such acts imply the present and direct exercise of ownership.... No co-owner may cause any material changes, unless all the co-owners have consented, tacitly if necessary. Acts by a sole co-owner, if useful to all, are ratified as a *1079 defacto agency (negotiorum gestio). [Bolding added.]
Prior to the advent of comparative negligence, the contributory negligence of the employee was a bar to the recovery of the employer and himself on this cause of action. Vidrine, 268 So.2d at 246, n. 1; Lalande v. Index Geophysical Survey Corporation, 336 So.2d 1054 (La.App. 3rd Cir. 1976). With the advent of comparative negligence, the contributory fault of the employee was no longer a bar to recovery on this cause of action; any recovery in such a factual posture[11] would be reduced by the employee's degree of fault. La.C.C. art. 2323 as amended by Acts 1979, No. 431.
When comparative negligence first went into effect, La.R.S. 23:1101 provided, in pertinent part, as follows:
Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to such employee or his dependents. [Emphasis added.]
This provision of law sets forth the manner in which the damage recovery on the cause of action is to be divided between the employer and the employee. It did not provide for how much the recovery on the cause of action was to be reduced by comparative negligence. By Acts 1985, No. 931, this portion of La.R.S. 23:1101 was amended to provide as follows:
B. Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or becomes obligated to pay as compensation to such employee or his dependents. The recovery allowed herein shall be identical in percentage to the recovery of the employee or his dependents against the third person and, where the recovery of the employee is decreased as a result of comparative negligence, the recovery of the person who has paid compensation or has become obligated to pay compensation shall be reduced by the same percentage. [Emphasis added.]
This amendment apparently was intended to effect a change in the manner in which the damage recovery on the cause of action is to be divided between the employer and employee.
South asserts the 1985 amendment to La.R.S. 23:1101 is substantive, because it is substantive it cannot be applied retroactively, the trial court applied it retroactively to reduce South's award on the intervention, and, thus, the trial court fell into error. We agree that the 1985 amendment to La.R.S. 23:1101 is substantive and cannot be applied retroactively,[12] but this does not dispose of the issue. We must still determine what effect, if any, the comparative negligence law (Acts 1979, No. 431) had on the employer's recovery.
In Trosclair v. Terrebonne Parish School Board, 489 So.2d 1293 (La.App. 1st Cir.), writs denied, 493 So.2d 644, 647 and 649 (La.1986) (En Banc), this court reduced an employer's intervention award by the amount of the comparative negligence of the employee. The accident in Trosclair occurred in 1981. In Scott v. Barclay's American Leasing Service, Inc., 506 So.2d 823, 830 (La.App. 1st Cir.), writ denied, 508 So.2d 88 (La.1987), this court again considered this issue and reduced an employer's intervention award by the amount of the comparative negligence of the employee with the following rationale:
Prior to 1985, La.R.S. 23:1101 did not specifically apply the laws of comparative negligence to recovery of workers' compensation benefits by the employer or his workers' compensation insurer. However, this court is of the opinion that when comparative negligence was adopted in Louisiana, the doctrine was equally applicable to workers' compensation recovery under La.R.S. 23:1101. For *1080 this reason, the judgment in favor of Scott on behalf of Kendrill Jackson will be amended and apportioned such that Bituminous will be allowed to recover 75 percent of the benefits paid to Kendrill Jackson.
The accident in Scott occurred in 1982. See, also, Chatelain v. Project Square 221, 505 So.2d 177 (La.App. 4th Cir.), writs denied, 508 So.2d 71 and 74 (La.1987). In W. Malone and H. Johnson, 14 Louisiana Civil Law Treatise, Workers' Compensation Law and Practice § 371, pp 74 and 76-77 (1988 Pocket Part), this rationale is discussed as follows:
Amendments wrought by Act 931 of 1985 interject comparative negligence into this dispute to adjust the equation in one place. As amended, Section 1101(B) now provides that the recovery of the carrier or the employer on the reimbursement claim "shall be identical in percentage" to the recovery of the claimant against the tortfeasor. When the recovery of the claimant is "decreased as a result of comparative negligence," the recovery of the employer or carrier "shall be reduced by the same percentage."39.5
This change seems fair, and actually only brings the law applicable to employer or carrier reimbursement into symmetry with the law applicable to the injured employee's claim, which is clearly subject to reduction under comparative negligence rules if the tortfeasor can provide that the injured employee's fault contributed to his injury. The net effect is to place some of the responsibility for compensation on the employment enterprise when the injured employee was at fault along with the tortfeasor.
34a. One possible result under comparative negligence would be a percentage reduction of the employer's reimbursement claim by the percentage of fault assigned to the employee (either the claimant or a co-employee). This appears to be the result in France. In the equivalent of a workers' compensation intervention by the employer for reimbursement of compensation paid because of the work-related death of the employee, the court held that the employer must suffer diminution of that reimbursement by the same percentage originally assigned to the employee in his own action against the tortfeasor. Durovray et Garantie Mutuelle des fonctionnaires C.C.P.A.M. de l'Ain et autres, Cour de Cassation, 19 juin 1981, Rec.Dal.Sirey 16 déc. 1981, 641.
See Chatelain v. Project Square 221, 505 So.2d 177 (La.App. 4th Cir. 1987) (citing Text), writ denied 508 So.2d 74 (La.1987), in which this result is termed the "only equitable result."
. . . .
39.5 LSA-R.S. 23:1101(B), as amended by Acts 1985, No. 931. The percentage reduction in the reimbursement claim when the compensated employee was negligent has been applied even to injuries occurring prior to the 1985 amendment, on the ground that when comparative negligence affected the claimant's tort recovery it also affected the reimbursement, since the reimbursement was limited to the amount of the judgment in the claimant's favor. See Scott v. Barclay's Amer. Leasing Service, Inc., 506 So.2d 823 (La.App. 1st Cir.1987), writ denied 508 So.2d 88 (La.1987) and Chatelain v. Project Square 221, 505 So.2d 177 (La.App. 4th Cir.1987) (citing Text), writ denied 508 So.2d 74 (La.1987). While these decisions seem to achieve an element of fairness, a literal reading of the Act is probably to the contrary.
This panel of this court is bound to follow Trosclair and Scott.
This assignment of error is without merit.

E. MOODY v. ARABIE ATTORNEY FEE

(Thomas Assignment of Error No. 5)
After judgment was rendered on the merits in the trial court, Thomas filed a *1081 motion[13] to fix an attorney fee to be paid for the work his attorney did in obtaining recovery of the sum for which South was reimbursed on its intervention, citing Moody v. Arabie, 498 So.2d 1081 (La.1986). This motion was denied.[14] Thomas asserts this was error.
As previously indicated, Moody v. Arabie held that, when an employer pays compensation to an employee, the employer becomes an owner in indivision (co-owner) with the employee of the employee's cause of action in tort against a third person. As owners in indivision, each is liable for his proportionate share of the maintenance and conservation of the right, and the necessary and reasonable attorney fees for effecting a recovery must be shared. The employee is entitled to a hearing to make this determination. See, for example, Samanie & Barnes v. Lawler, 517 So.2d 340 (La.App. 1st Cir.1987). In calculating the fee, the trial court should consider the proportionate interests of the employer and employee in the cause of action, the factors set forth in Code of Professional Responsibility DR 2-106 and, where the employer and employee are each represented by counsel, the amount of work performed by each counsel. W. Malone and H. Johnson, 14 Louisiana Civil Law Treatise, Workers' Compensation Law and Practice § 367, pp 59-63 (1988 Pocket Part).
This assignment of error has merit.

II. WORKERS' COMPENSATION CAUSE OF ACTION

A. DISMISSAL OF COMPENSATION CAUSE OF ACTION WITH PREJUDICE

(Thomas Assignments of Error Nos. 3 and 8)
Thomas contends the trial court committed error when it dismissed his compensation cause of action with prejudice because he has potential claims for future workers' compensation benefits and medical expenses and, thus, his workers' compensation cause of action should have been dismissed without prejudice.
The trial court found as fact that Thomas was not disabled at the time of trial and his need for future medical treatment was speculative. Thomas does not assign error on this disability ruling. Thomas is not entitled to an award for future medical payments on his workers' compensation cause of action as a matter of law. Lester v. Southern Casualty Insurance Company, 466 So.2d 25 (La.1985). Thomas' cause of action for future workers' compensation medical payments will only come into existence when those expenses have been incurred. Lester, 466 So.2d at 28 (Lemmon, J., concurring opinion). The trial court correctly dismissed the workers' compensation claim with prejudice. La.C.C.P. arts. 1673 and 1844.
These assignments of error are without merit.

B. STATUTORY PENALTIES

(Thomas Assignment of Error No. 6)
Thomas asserts the trial court erred by failing to award him statutory penalties because South failed "to make payments of medical expenses and guarantees to Dr. Judice for medical care" and "[a]fter the October 1985 trial, and through the February 1986 trial, no medical expenses were paid, and plaintiff was forced to make payments himself." Thomas contends the failure to make payments was arbitrary, capricious and without probable cause.
There is insufficient evidence of record to support these factual claims, and the trial court's failure to grant a penalty award was not manifestly erroneous.
This assignment of error is without merit.

*1082 III. DENIAL OF MOTION FOR NEW TRIAL

(Thomas Assignment of Error No. 4)
Thomas asserts the trial of this matter was concluded in February of 1986, and in May of 1986, he "had serious injuries from an automobile accident on May 20, 1986" and "his cervical condition became worse and caused him to incur additional medical care from various physicians." The trial court's judgment was rendered on September 5, 1986, and on September 15, 1986, Thomas filed a motion for a partial new trial contending, among other things, that the May 1986 accident was newly discovered evidence that entitled him to a new trial pursuant to La.C.C.P. art. 1972. The trial court denied this motion on March 20, 1987. Thomas asserts this was error.
La.C.C.P. art. 1972 applies only to evidence which existed at the time of trial, but was discovered after the trial was completed. Scott v. Terrebonne Lumber Company, 479 So.2d 410 (La.App. 1st Cir.1985), writ denied, 485 So.2d 61 (La.1986). Evidence of the May 1986 accident did not exist when the trial was concluded in February of 1986. Thomas was not entitled to a new trial on this basis as a matter of law.
This assignment of error is without merit.

IV. FAILURE TO TAX COSTS

(Thomas Assignment of Error No. 9)
Thomas asserts the trial court committed error by failing to tax the cost of Audrey Folse's deposition as cost of court and by failing to fix expert witness fees for Dr. Bourgeois and Mr. Kinnard, who were qualified as experts at the trial.
The trial court's judgment cast Hartford for all costs and fixed the expert witness fees of Dr. Cenac and Dr. Judice at $300 each. Thomas subsequently filed a combined motion to tax costs and fix a Moody v. Arabie attorney fee. This motion does not request that expert witness fees be fixed for Dr. Bourgeois or Mr. Kinnard. It merely states "that court costs included depositions that were introduced at trial for impeachment and other purposes, and these costs ought to be taxed against Hartford." The deposition of Audrey Folse was introduced into evidence as exhibit P-10 at the trial. Attached to this deposition is an invoice which shows it cost $214 for an original and one copy of the deposition. The trial court summarily denied the motion.
The trial court was within its discretion to deny the motion to tax costs because it did not adequately advise the court what costs the plaintiff wanted taxed. The plaintiff is reserved the right to seek these costs in a properly drafted motion to be filed in the trial court. La.R.S. 13:3666 and 4533.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court denying the plaintiffs' motion for a Moody v. Arabie attorney fee is reversed, and this motion is remanded to the trial court for a hearing to fix the fee in accordance with the views expressed herein; in all other respects, the judgment of the trial court is affirmed. The costs of this appeal are assessed 50% to South and 50% to Hartford.
REVERSED AND REMANDED IN PART; AFFIRMED IN PART.
NOTES
[1] The defendants in the tort action paid the plaintiff and his wife $34,457.78 and received a partial satisfaction of judgment.
[2] South intervened in the tort cause of action for reimbursement. However, exhibit Intervenor No. 1 shows that First Horizon Insurance Company was the workers' compensation insurer of Terrebonne from January 1, 1983, to January 1, 1986.
[3] Dr. Cenac referred Thomas to Donald Kinnard, a physical therapist. During the period of July 5, 1983, to September 29, 1983, Kinnard had 34 physical therapy sessions with Thomas.
[4] Dr. Judice testified that he felt the words bulging, protruding and herniated all meant the same thing when used to describe a spinal disc.
[5] The trial court's reasons for judgment state that $2,951.47 in medical expenses were paid and fixed the total payments at $6,231.85. Intervenor exhibit No. 2 (cancelled checks) shows compensation benefit payments of $3,454.34 ($173.96 for 19 weeks and $149.10 for 1 week) and medical payments of $2,912.29, for a total of $6,366.63.
[6] Fischer also testified that Terrebonne's insurer in October of 1984 was different from Terrebonne's insurer in June of 1983. Warren Perkins, a claims supervisor for American Excess Underwriters (American) of New Orleans, testified that American was the managing agent who had placed Terrebonne's insurance in June of 1983, but that this relationship changed in about May of 1984.
[7] In Watson, 469 So.2d at 971, appears the following:

Watson was not without fault in this accidental shooting. However, the concept of comparative negligence, written into La.Civ.Code Ann. art. 2323,7 permits a plaintiff such as Mr. Watson (or his wife and children) to recover damages, notwithstanding his own negligence.
. . . .
7. La.Civ.Code Ann. art. 2323 provides:
When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
[8] In Watson, 469 So.2d at 974, appears the following:

After weighing the factors discussed hereinabove, we apportion the fault as follows. To plaintiff, we assign 20% of the fault in this fatal accident. We find further that Earl Creel and his son, Shane Creel, were each also at fault, and the degree or percentage of negligence attributable to them was 40% each.
There remain in this lawsuit issues concerning quantum which are still to be resolved and which we determine should appropriately be decided by the Court of Appeal. This includes the assessment of damages for each of the plaintiffs, as well as reduction thereof by virtue of 1) Doyle Watson's percentage of contributing fault, and 2) the possible reduction attendant to plaintiffs' having settled prior to trial with Farm Bureau Insurance Company. The fault of either spouse cannot be imputed to the other or the community merely because of the marital relationship. Lewis v. Till, 395 So.2d 737 (La.1981); Hebert v. Weaver, 484 So.2d 743 (La.App. 1st Cir.), writ denied, 487 So.2d 440 (La.1986); Pope v. City of Baton Rouge, 449 So.2d 1070 (La.App. 1st Cir.1984); First State Bank & Trust Company v. Fireman's Fund Insurance Company, 399 So.2d 729 (La.App. 1st Cir.1981). There was no third party demand by Lafourche and Hartford. La.C.C. art. 1801; Smith v. Southern Farm Bureau Casualty Insurance Company, 247 La. 695, 174 So.2d 122 (1965).
[9] In Cascio, 530 So.2d at 1175, the case of Scott v. Hospital Service District No. 1 of Parish of St. Charles, 496 So.2d 270 (La.1986) was cited as authority for the holding. In Scott, a jury verdict found the plaintiff wife 60% at fault, awarded the plaintiff husband $50,000 in loss of consortium and reduced the husband's award by 60%. The trial court granted a JNOV raising the defendant's fault to 100%. The court of appeal affirmed. The Louisiana Supreme Court found the JNOV was improperly granted and reinstated the jury award. The issue of the validity of reducing a spouse's loss of consortium award by the comparative negligence of the other spouse was not presented as an assignment of error.
[10] Lafourche did not answer or make an appearance in the record. The record before us does not show service on Lafourche or a preliminary judgment by default entered against it. However, the trial court rendered judgment against Lafourche. This has not been raised as error on appeal. See, however, Malbrough v. Wheat, 428 So.2d 1110 (La.App. 1st Cir.1983). The appellate brief filed on behalf of Hartford is also on behalf of Lafourche.
[11] A distinction must be made between the fault of the employee and the independent or vicarious fault (via another employee) of an employer.
[12] Vallere, 512 So.2d at 519.
[13] This motion was joined in a single pleading with a motion to tax costs.
[14] Thomas filed a second motion to fix a Moody v. Arabie attorney fee which was initially fixed for a hearing, but was subsequently continued without date and never heard.