518 So.2d 1091 (1987)
Emelda Williams, Wife of and Thomas WILLIAMS, et al.
v.
AMERICAN CRESCENT ELEVATOR COMPANY, et al.
No. CA-6671.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1987.
Rehearing Denied February 11, 1988.
Writs Denied April 11, 1988.
*1092 Bendana & Carlton, Wayne H. Carlton, Jr., Orlando G. Bendana, New Orleans, for plaintiff-appellee Emelda Williams.
Charles A. Boggs, Boggs, Loehn & Rodrigue, and Robert E. Leake, Jr., Hammett, Leake & Hammett, New Orleans, for defendant-appellant Montgomery Elevator Co.
Ronald L. Ronzello, Metairie, for defendant-appellant American Crescent Elevator Co.
Shelley Herman Gillon, Asst. Chief Atty., Don J. Hernandez, Chief Deputy City Atty., Okla Jones, II, City Atty., New Orleans, on behalf of intervenor-appellee City of New Orleans.
Before KLEES, CIACCIO and WILLIAMS, JJ.
KLEES, Judge.
On September 24, 1982, the plaintiff, while working as a custodian at the New Orleans Public Library, tripped and fell as she attempted to enter an elevator that had stopped approximately ten inches above the floor. As a result of her fall, plaintiff sustained a back injury which rendered her partially disabled and incapable of returning to work as a custodian. Plaintiff sued Montgomery Elevator Company, the manufacturer of the elevator; American Crescent Elevator Company, the maintenance contractor at the time of the accident; and the City of New Orleans, the owner of the elevator, alleging that the three defendants were jointly responsible for her injuries.
The City filed an exception of no cause or right of action based upon the fact that, as the employer of the plaintiff, it was liable only for workmen's compensation benefits. The exception was maintained and the City dismissed by means of a consent judgment. The City then intervened seeking reimbursement of the amounts it had paid and was continuing to pay plaintiff in compensation.
After a full trial on the merits, the jury awarded plaintiff $280,000.00 in damages, *1093 to be reduced by twenty percent (20%) to account for plaintiff's own negligence. The remainder of the fault for the accident was assessed sixty percent (60%) to American Crescent and forty percent (40%) to Montgomery. The court also found in favor of the City on its reimbursement claim. Montgomery, American Crescent and plaintiff have appealed the judgment.
On appeal, both defendants argue that plaintiff's fault was the sole cause of the accident. Alternatively, Montgomery claims that there was no basis for any finding of fault on its part as manufacturer of the elevator because the plaintiff did not show a vice or defect in the product. American Crescent asserts that the verdict was improper because the district judge commented on the evidence during the trial and allowed improper photographic evidence to be introduced. Finally, the plaintiff contends that the amount of damages awarded was inadequate, that she was not at fault to any degree in causing her injuries, and alternatively, that the City's recovery should be reduced by the degree of her fault. We shall discuss these issues in turn.
FAULT OF THE PLAINTIFF
The crux of defendants' arguments on this point is that because plaintiff saw that the elevator was unlevel and still attempted to get in it, she assumed the risk and is liable for her own injuries. See White v. Picou's Builders Supply, 432 So.2d 986 (La.App. 1st Cir.1983). Plaintiff, on the other hand, argues that she did not assume the risk because, even though she was aware of the elevator's condition, she did not fully appreciate the danger. Plaintiff relies on Guillotte v. Houston General Ins. Co., 368 So.2d 1026 (La.1979), wherein the Supreme Court held that a plaintiff who tripped over a sixteen inch high string of Christmas lights did not assume the risk of injury. In that case, the Court reasoned that even though the plaintiff had seen the lights strung across the sidewalk and voluntarily decided to step over them, she did not actually appreciate the danger, but thought that she could safely negotiate the crossing. Id. at 1028.
For assumption of the risk to apply, plaintiff must not only see the dangerous condition, but also be aware that a risk is involved. See: Bass v. Aetna Ins. Co., 370 So.2d 511, 514 (La.1979); Guillotte v. Houston General Ins. Co., supra. In this case, the evidence indicated that the elevator frequently stopped at varying heights both above and below the floor, and that plaintiff and her co-workers were accustomed to using it in this manner. In fact, another custodian had successfully entered the elevator just prior to plaintiff's attempt to get in it. Under the circumstances, it is reasonable to assume that plaintiff did not fully appreciate the danger involved and therefore cannot be found to have assumed the risk.
Additionally, plaintiff argues that any finding of fault on her part is clearly wrong because she was required to use the elevator as a condition of her employment. In support of this argument, plaintiff cites Chaney v. Brupbacher, 242 So.2d 627 (La. App. 4th Cir.1970), in which this court held that a supervisor who creates or permits a dangerous condition to exist in the workplace cannot escape liability on the theory that a workman is contributorily negligent merely by going into the danger, because the worker's only alternatives are to tell his superior how to run the job or to quit. Id. at 631. In the instant case, although plaintiff was not directly ordered to use the elevator in question, she and two co-workers testified that they had complained to their superiors about the elevators not leveling on many occasions, and had been told to use them whenever possible. According to their testimony, there were some occasions prior to the accident when the custodians had chosen not to enter the elevator because they felt it was either too high above or too low beneath the floor. Thus, while plaintiff was not actually forced to use the elevator on this particular occasion and could have chosen to wait for another one, she was nevertheless under general instructions to continue using the elevators as best she could despite the leveling problems. Under these circumstances, we find no manifest error in the jury's verdict attributing *1094 twenty percent (20%) of the fault to the plaintiff, and therefore affirm the judgment in that respect.
FAULT OF MONTGOMERY
In order to hold Montgomery liable as manufacturer of the elevator, plaintiff must show that the elevator was defective, or unreasonably dangerous to normal use. Weber v. Fidelity & Casualty Ins. Co. of N.Y., 259 La. 599, 250 So.2d 754 (1971). Montgomery argues that plaintiff failed to meet this burden of proof, and that therefore the jury's assessment of forty percent (40%) of the fault to Montgomery is manifestly erroneous.
Henry Haluba, who has been an engineer for Montgomery since 1949 and was recognized as an expert in elevator design and operation, testified that the elevator in question was designed and built by Montgomery in 1957 pursuant to specifications contained in Montgomery's contract with the City. The elevator was installed in 1958 by Louisiana Elevator Company. The elevator is a "single speed AC" type, which was common at the time it was built. Several witnesses testified that this type of elevator, which is stopped by means of a brake, has inherent leveling problems because the action of the brake is affected by such things as the weight of the load in the elevator, the atmospheric conditions and the temperature. Nevertheless, Mr. Haluba testified that this particular elevator was equipped with a larger than standard motor to promote greater stopping accuracy, as well as with an automatic leveling device (up leveling relay and down leveling relay) designed to level the elevator if it stopped uneven with the floor.
Montgomery held the maintenance contract on the elevator from 1967 until 1977, when American Crescent got the contract. Bobby LeBlanc, the maintenance mechanic responsible for the elevator during the time Montgomery held the contract, testified that he routinely tested the relays during his maintenance checks and that they functioned properly to level the elevator. Neither plaintiff nor American Crescent presented any evidence showing that the elevator malfunctioned or had leveling problems during the time Montgomery maintained it. American Crescent's maintenance mechanic testified that shortly after his company took over the contract, he discovered that the leveling relays were disconnected, but he did not know whether Montgomery personnel had disconnected them or exactly when they had become disconnected. His testimony was refuted by Mr. LeBlanc, who stated that the relays remained operational during the entire time Montgomery was responsbile for the maintenance, and that he never disconnected them. There was expert testimony presented by American Crescent to the effect that such an automatic leveling device would not work on a single speed AC elevator, but the expert, Donald Moynihan, had never seen the elevator in question or any diagrams of it. His testimony was contradicted by both Montgomery's expert, Mr. Haluba, and its service mechanic, Mr. LeBlanc. Montgomery's involvement with the elevator ceased when it lost the maintenance contract in 1977, some five years before the accident occurred.
In view of the evidence presented, we can find no reasonable factual basis for the conclusion that the elevator was defective as manufactured. The evidence shows that although single speed AC type elevators have inherent leveling difficulties, they were commonly used in the late 1950's. Moreover, Montgomery was able to adequately control the leveling function during the time it maintained the elevator. Under these circumstances, we find the jury's conclusion that Montgomery was forty percent (40%) at fault in causing the accident to be manifestly erroneous. See Canter v. Koehring Co., 283 So.2d 716 (La.1973). We therefore reverse the portion of the judgment holding Montgomery liable.
FAULT OF AMERICAN CRESCENT
The jury found that the negligence of American Crescent constituted sixty percent (60%) of the fault not attributable to the plaintiff in causing the accident. Montgomery argues that the accident, if not caused by the plaintiff, was wholly caused by the negligence of American Crescent. *1095 The plaintiff further contends that the trial court erred by not instructing the jury that the law of products liability might be applicable to American Crescent based upon American Crescent's substantial alteration of the elevator. However, as there was no definitive evidence showing when the leveling relays were disconnected, which must be the basis of plaintiff's alteration theory, we find that American Crescent could only be liable under the theory of negligence, and that the trial judge correctly so limited the jury instructions.
There was substantial evidence regarding the negligence of American Crescent, who was responsible for maintenance and repair of the elevator from 1977 through the date of the accident. Both of American Crescent's mechanics, Curtis Simon and Ronald Plauche, testified that there was a recurring problem with the leveling of the elevator throughout the time they maintained it. This testimony was confirmed by the "call back" tickets showing the frequency of complaints about the elevator. Mr. Simon stated that the leveling relays were present when he took over maintenance of the elevator in 1977, but shortly thereafter he discovered that they were not hooked up. He neither reconnected the relays nor removed them. Mr. Plauche, who took over the maintenance job in 1979, testified that the relays, which are actually switches in the control room that activate the automatic leveling unit, were missing. Although he mentioned this fact to his supervisor, the relays were not replaced, and he continued to deal with the leveling problems by merely adjusting the brake. Mr. Plauche testified that he changed the brake linings approximately one month after the accident, and there was expert testimony to the effect that his failure to change the linings sooner was improper maintenance.
American Crescent's only possible defense to the allegation of negligence on its part is that both Mr. Plauche and Mr. Simon told Mr. Wright, the City official in charge of the library, that the elevator needed to be completely overhauled, but the City never appropriated funds for the renovation. Mr. Plauche also stated that he had no authority to replace the leveling relays without permission from the City, although he admitted that he had replaced other relays when they had burned out.
In our view, the actions of the City, which could not be made a party to this case due to the policy underlying the Workmen's Compensation Act, do not excuse the negligence of American Crescent in failing to properly maintain this elevator. The undisputed evidence shows that the elevator exhibited a constant leveling problem, and that it was equipped with an automatic leveling system designed to correct this very problem, a system which American Crescent, for whatever reason, let remain unoperational for five years prior to the accident. American Crescent, as maintenance contractor, had a duty to repair all features of the elevator, including the automatic leveling device. American Crescent, with the knowledge that the elevator needed a major overhaul which the City declined to authorize, could have refused to maintain the elevator any longer. By continuing to maintain it, American Crescent risked the occurrence of an accident that would expose it to exactly the type of liability it has in this situation. Therefore, we modify the lower court's judgment to the extent of assessing to American Crescent the entirety of the fault not attributed to the plaintiff by the jury verdict.
We also note that we find no merit to American Crescent's argument that its case was prejudiced by the trial judge commenting on the evidence or improperly admitting certain photographic evidence.
QUANTUM
Plaintiff complains that the amount of damages awarded was inadequate. In Coco v. Winston Industries, Inc., 341 So. 2d 332, (La.1976), the Supreme Court stated that before a court of appeal can disturb the quantum award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making the award. We find no such abuse of discretion here, and therefore decline to alter the award. *1096 APPLICABILITY OF R.S. 23:1101(B) TO THE CITY'S REIMBURSEMENT AWARD
The City intervened in this case to recover the amount it had paid to plaintiff in workmen's compensation benefits. Such recovery is authorized by R.S. 23:1101. However, prior to 1985, the statute authorized recovery of the full amount paid by the employer; whereas, in 1985 it was amended to require that the employer's recovery be reduced by the percentage of fault attributable to the employee. As the trial judge awarded the full amount to the City, plus a credit for future payments, the plaintiff now urges that the amendment should be applied retroactively to reduce the City's award by twenty percent.
A statute cannot be applied retroactively if it is substantive in nature or if it would deprive a party of vested rights. See generally: Coates v. Owens-Corning Fiberglas, 444 So.2d 788 (La.App. 4th Cir. 1984); Rico v. Vangundy, 461 So.2d 458 (La.App. 5th Cir.1984). In this case, we agree with our colleagues on the Second and Third Circuits that this amendment is substantive in nature and affects vested rights. See: Vallere v. Nicor Exploration Co., 512 So.2d 514 (La.App. 3d Cir.1987); Gadman v. State of Louisiana Dept. of Transportation and Development, 493 So. 2d 661 (La.App. 2d Cir.1986). Cf: Scott v. Barclay's American Leasing Service, Inc., 506 So.2d 823 (La.App. 1st Cir.1987). For this reason, we decline to apply the amendment retroactively, and therefore affirm the award to the City of New Orleans.
CONCLUSION
Accordingly, for the reasons stated herein, the lower court's judgment is modified only to the extent of releasing Montgomery Elevator Company from all liability to the plaintiff and the intervenor, and casting American Crescent in judgment for one hundred percent (100%) of the amounts awarded to both the plaintiff and the City of New Orleans. In all other respects, the judgment is affirmed.
MODIFIED IN PART; AFFIRMED IN PART.
WILLIAMS, J., dissents with reasons.
WILLIAMS, Judge, dissents with reasons.
I respectfully disagree with the allocation of fault. Clearly, plaintiff's actions were of such a nature as to require a finding of more than 20% fault. She was able to put her cleaning supplies into the elevator before attempting to enter it herself. She should have been, therefore, quite aware of the height difference. I would find that she was at least 50% at fault.
Also, I am concerned about the issue of employer's fault as it relates to third-parties. Apparently the majority has followed the reasoning of the Third Circuit in Franklin v. Oilfield Heavy Haulers, 478 So.2d 549 (La. 3d Cir.1985) writs den. 481 So.2d 1330 and 1331 (La.1986). In Franklin, the court held that an employer's recovery of workers' compensation benefits could not be reduced by its amount of negligence. As the courts in Franklin and in Vidrine v. Michigan Millers Mut. Ins. Co., 263 La. 300, 268 So.2d 233 (1972), noted there exists an inequity in this rule of law. An employer, who may be substantially negligent, may eventually emerge unscathed in a situation such as this if there is a co-tortfeasor against whom the employee-plaintiff may recover 100%. The employer may then recoup workers' compensation benefits paid to the employee from an award in tort, without being penalized in any way for its own negligence. This seems patently unfair to the plaintiff as well as to a third-party who does not and can not participate in the unique system of "give and take" that is part of workers' compensation scheme.
Furthermore, the passage of Act No. 373 (1987) (to be La.Civ.C. art. 2324) by the Louisiana legislature may create a problem in this area. The courts may have to make an allocation of fault attributable to an employer immune in tort, because a co-tortfeasor will no longer be solidary liable for *1097 more than 50% of the recoverable damages. Unless the legislature can clarify the applicability of this new code provision to the workers' compensation system, further confusion and inequity may result.