SAVOIE, Judge.
This case deals with an allegedly defective shoulder. Plaintiffs, Clark Holloway and Charles R. Facundus, filed suit against the State of Louisiana through the Department of Transportation and Development (DOTD) seeking to recover damages for injuries sustained in a one-vehicle accident on May 21, 1984 in East Baton Rouge Parish. Facundus was driving a 1973 GMC Astro cab-over-truck with a Lo-Boy Equipment trailer, and Holloway was a passenger. The vehicle was southbound on Louisiana Highway 37, Greenwell Springs Road; Greenwell Springs Road is a two lane road with one to two foot wide shoulders and adjacent ditches. Facundus’ truck left the roadway after negotiating a right-hand curve, travelled along the shoulder and then the ditch. It stopped after hitting a tree on the right side of the ditch.
At the time of the accident, both men were in the course and scope of their employment. Wausau Insurance Company (Wausau), the compensation carrier for the plaintiffs’ employer, Facundus Dozer & Equipment Company, intervened in the lawsuit to recover the compensation benefits and medical expenses it had paid and would possibly pay in the future to plaintiffs.
Following trial on the merits on March 30 and 31, 1987, the trial court rendered judgment finding Facundus 60% at fault and DOTD 40% at fault. The court awarded damages to Facundus and Holloway as follows: Facundus — general damages, $65,-000.00; past lost wages, $9,000.00; future lost wages, $71,050.00; and medical expenses, $14,182.52 (total — $159,232.52); and Holloway — general damages, $90,-000.00; past lost wages, $13,000.00; future lost wages, $30,399.00; and medical expenses, $31,181.85 (total — $164,580.85). The court awarded Wausau damages as follows: against Holloway, medical, $31,-181.85 and worker’s compensation benefits, $30,786.31; and against Facundus, medical, $14,182.52, and worker’s compensation benefits, $32,340.00. The damages awarded Wausau against Facundus were reduced by Facundus’ percentage of fault. From this judgment, DOTD, Holloway, and Wausau appeal.
The parties urge as error the following:
1) the trial court erred in finding DOTD at fault (raised by DOTD);
2) the trial court erred in attributing 60% fault to Facundus (raised by Holloway and Wausau);
3) the trial court erred in only awarding general damages of $90,000.00 to Holloway (raised by Holloway);
4) the trial court erred in only awarding future lost wages of $30,399.00 to Holloway (raised by Holloway);
5) the trial court erred in failing to render judgment for Wausau including language reflecting credit for any future expenses or benefits Wausau might have to pay Facundus or Holloway (raised by Wausau);
*862 6) the trial court erred in rendering judgment for Wausau which included a reduction of its award against Facundus by the amount of Facundus’ fault (raised by Wausau).
FINDINGS OF FAULT AND ALLOCATION OF FAULT
The trial court reasoned that if Fa-cundus had never driven off the road, the accident would not have happened, and therefore found that Facundus was more at fault than DOTD. The court found that DOTD was at fault because the shoulder was inadequate. The trial court distinguished the case of Myers v. State Farm Mutual Automobile Insurance Co., 493 So.2d 1170 (La.1986).
The plaintiffs contend that there was a severe drop-off between the road and the shoulder at the point where Facundus’ tire went off the road, and that as the truck went onto the shoulder and continued travelling, there were areas where the shoulder was nonexistent. DOTD argues that the allegedly inadequate shoulder was irrelevant to the accident because it was defective at an area where Facundus’ truck was already in the ditch. DOTD further contends that the curve in the road also did not contribute to the accident because the curve was not hazardous and because the truck went off the road after it negotiated the curve.
In reviewing a decision of the trial court, this court may not disturb that decision unless it is clearly wrong or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Under either negligence or strict liability, DOTD has a duty to travelers to maintain the highways and their shoulders in a reasonably safe condition. Myers, 493 So.2d at pp. 1171-1172; Kyle v. City of Bogalusa, 506 So.2d 719, 722 (La.App. 1st Cir.1987). The duty to maintain the shoulders encompasses the obligation to protect a motorist who inadvertently drives onto the shoulder. Deville v. State through DOTD, 498 So.2d 1142, 1144 (La.App. 3d Cir.1986) citing Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979). “[A]n implicit necessity for the functional use of a shoulder is a connection between the roadway and shoulder that allows for safe gradual movement from one to the other.” Sinitiere v. Lavergne, 391 So.2d 821, 825 (La.1980).
We can not say that the trial court erred in distinguishing the Myers case. As the supreme court stated in Myers: “Whether DOTD had breached this duty, that is, whether the roadway and shoulders at the scene of the accident were in an unreasonably dangerous condition will depend upon the particular facts and circumstances of each case.” Myers, 493 So.2d at 1172 (footnote omitted). In Myers, the plaintiff was a guest passenger in an automobile which was forced off the roadway by another car, travelled along the shoulder for ten feet, began sliding down into the roadside ditch, travelling eighty-seven feet, and subsequently struck a tree on the right side of the roadside ditch. The accident occurred on Greenwell Springs Road, near the location of the accident in the case sub judice. In the Myers case, the same experts who testified in this case were witnesses. Dr. Edward J. Rhomberg testified on behalf of the plaintiffs in both cases and opined that in 1977 DOTD violated its standards for horizontal clearance when it widened Greenwell Springs Road to make the roadway twenty-four feet wide and each shoulder about a foot in width. The supreme court rejected this opinion, holding that although DOTD technically violated its standards, the improvements made the highway safer. Dr. Rhomberg also testified that Greenwell Springs Road was unsafe because it did not meet the current standards for construction of new highways and major reconstruction of older ones. The supreme court held that the failure of DOTD to reconstruct the state’s highways to meet modern standards does not establish the existence of a hazardous defect. Myers, 493 So.2d at 1170. For these reasons, the supreme court found that DOTD was not liable to the plaintiff.
In this case, the trial court’s basis for finding DOTD liable was different from the plaintiff’s contentions in Myers (which focused on the width of the shoulder). Here, *863 the court found that the shoulder was not adequately maintained whereas maintenance of the shoulder was never an issue in Myers. This finding was supported by the evidence. Testimony of the plaintiffs’ witnesses shows that at the point where the truck went off the road there was a drop-off of a minimum of 3¾ inches and a maximum of 7 inches. While DOTD contends that these figures pertain to an area of the roadway and shoulder next to a stump — an area which Facundus would have encountered after he had been travelling on the shoulders for about eighty feet and well after his first tire had already left the roadway — a review of the record shows that these figures do correspond to the location where Facundus’ truck initially went off the road. DOTD further contends that these drop-offs were much smaller than plaintiffs claim or nonexistent because Trooper Danny L. Hart, the investigating officer, and Dr. Olin K. Dart, the defendant’s expert witness, testified that the section of the road where plaintiff’s tire went onto the shoulder was the same as all the rest of Greenwell Springs Road, and that there were no major drop-offs. Yet on cross-examination, Trooper Hart testified that he made no measurements for drop-offs, nor was he looking for any significant drop-offs since he was following the trail of the plaintiffs’ vehicle during his investigation of the accident. Dr. Dart’s testimony indicated that he had not measured any drop-offs at the point where the truck left the road.
DOTD’s assistant maintenance engineer, Cayetano Ribas, testified that a maintenance employee checks Greenwell Springs Road for drop-offs, among other things. According to Ribas and DOTD’s Maintenance Standards Manual, a three to five inch drop-off must be put on a repair schedule, and a drop-off greater than five inches requires emergency repair. William Hickey, a road design engineer with DOTD, said that a shoulder should begin at a point level with the road.
The record shows that not only was there a drop-off where Facundus’ truck left the road, but the shoulder was of varying width and at one point (at the stump) there was no shoulder at all. In the Myers case, the shoulder was well-maintained, according to Dr. Rhomberg and Dr. Dart. The trial court also distinguished the Myers case on the basis that this accident involved a curve whereas Myers involved a straightaway. Dr. Rhomberg testified that in a right-hand curve, drivers tend to go off to the right whereas Dr. Dart testified that they go towards the center lane. The courts previously have recognized a driver’s tendency to go off the road in a right-hand curve. Quinn v. State, through Department of Highways, 464 So.2d 357 (La. App. 3d Cir.), writs denied, 467 So.2d 1134, 1136 (La.1985).
DOTD also argues that Facundus’ vehicle went off the road and straight into the ditch. An examination of the record does not support this conclusion. Facun-dus said that he was travelling at about 40 m.p.h. and was just coming out of the curve when he felt his right front tire drop off the roadway on a “pretty severe drop-off”; he then let off the accelerator and tried to get the truck back onto the road. He felt the back axles of the truck go off the road and then the trailer. At that point he believed he couldn’t get the vehicle back on the road and he locked up all the brakes to try to stop the vehicle. Facundus then lost consciousness. On cross-examination, Facundus repeated his version of the accident. Furthermore, Trooper Hart on cross-examination by DOTD said that the truck did not go immediately into the ditch, but that “he just sort of drifted off ... [a]nd as he drifted more and more the vehicle went off the roadway....”
We also can not say that the trial court was clearly wrong in finding that the shoulder conditions and Facundus’ conduct caused the accident. Dr. Dart testified that a four or five inch drop-off coupled with an inconsistent shoulder would make it more difficult for the Facundus vehicle to regain the road.
While plaintiffs complain that the percentage of fault allocated to Facundus is too high, our jurisprudence has held that the allocation of comparative negligence is a factual matter which lies within the dis *864 cretion of the trial court, and will not be disturbed on appeal in the absence of manifest error. Rawls v. Morris, 470 So.2d 531, 535 (La.App. 1st Cir.1985). Examining the factors set forth by the supreme court in Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985), we can not' say that the trial court erred in finding Facundus 60% at fault.[1] A motorist has a duty to maintain proper control of his vehicle. See Cashio v. State, Department of Transportation and Development, 518 So.2d 1063, 1065 (La.App. 1st Cir.1987). While Facundus had not been drinking, was not speeding, and was returning home from a delivery, he did fail to maintain control of his vehicle on a road with very narrow shoulders. For these reasons, we can not say that the trial court erred in finding Facundus 60% at fault and DOTD 40% at fault.
TRIAL COURT’S GENERAL DAMAGES AWARD
Plaintiff Holloway complains that his award of $90,000.00 in general damages is insufficient. Holloway cites several cases wherein plaintiffs with injuries which he contends are similar were awarded greater damages amounts.
Before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making the award; a trial court award can not be modified unless it is not reasonably supported by the record. Miller v. Great Atlantic & Pacific Tea Co., 510 So.2d 695 (La.App. 1st Cir.), writ denied, 513 So.2d 1213 (La.1987). The court must look first, not to prior awards, but to the individual circumstances of the case. Harrigan v. Freeman, 498 So.2d 58,
64 (La.App. 1st Cir.1986). Finally, in determining whether the trier of fact abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Bonner v. Watkins Motor Lines, Inc., 494 So.2d 1363, 1369 (La.App.2d Cir.1986).
According to Dr. William Hagemann, the orthopedist who treated Holloway from May 22, 1984 until October 6, 1986, Holloway sustained severe injuries in the accident. He suffered minor abrasions; a fractured right femur; a compression fracture of the L-5 vertebra; a renal contusion causing hematuria; and palsy of a nerve in the shoulder. Holloway was hospitalized from May 21, 1984 through June 27, 1984. To treat Holloway’s fractured femur, Dr. Hagemann surgically inserted a Steinmann pin in his right tibia for traction. On June 1, 1984, Dr. Hagemann surgically inserted a rod in Holloway’s femur. Due to stiffness in the right knee, on July 17, 1984, while under general anethesia Holloway’s knee was manipulated. Holloway underwent physical therapy for his thigh beginning during his hospitalization and continuing through October 1, 1984. On September 3, 1985, the rod was removed from Holloway’s leg because it was causing severe discomfort in his right hip, thigh, and buttock. Once the rod was removed, Holloway’s leg healed rapidly.
Holloway’s compression fracture of his vertebra was treated first with traction, then with a Williams back brace and physical therapy. Holloway wore the back brace until August 28, 1984. Sometime in July or August of 1985, Holloway attended Back School. A CT-scan performed on October 8, 1985 showed that the compression fracture had healed and that there was no *865 involvement of any nerve roots. X-rays on April 28, 1986 and October 6, 1986 showed a healed compression fracture with no nerve root involvement. On these last two visits to Dr. Hagemann, Holloway complained of pain in his lower back. Dr. Hagemann prescribed muscle relaxers and Norgesic Forte to take as needed. We note that from July 17, 1984 through September 5, 1985, Dr. Hagemann did not prescribe any pain medication for Holloway.
Holloway’s shoulder problem first manifested itself on August 28, 1984; Holloway underwent physical therapy — the only treatment for this problem — from that time through June of 1985. As for the hematu-ria that Holloway experienced, this resolved itself within a few days after the accident.
On October 4, 1985, Dr. Hagemann opined that Holloway had reached maximum recovery. Holloway has a 15% whole body impairment due to his back, according to Dr. Hagemann and Dr. John Loupe, an orthopedist who examined Holloway on December 12, 1984 at Wausau’s request. Dr. Hagemann felt that Holloway completely recovered from his fractured femur and suffers no disability from it. According to Dr. Hagemann, Holloway would not require further surgery on his back or his thigh. Dr. Hagemann did say there was an increased probability that Holloway would develop arthritic changes in his lower back. Holloway was treated for his shoulder by Dr. Lawrence Fogel, a neurologist, who ' assessed a 5 to 10% whole body impairment due to the shoulder problem; plaintiff’s ability to lift and push things is permanently affected.
Holloway testified that he was in severe pain immediately after the accident, and that he was in pain throughout his recovery. At the time of trial he still experienced back pain for which he took pain medication and leg pain where he had sustained the fracture; he said he had no shoulder or hip pain but that he still could not completely raise his shoulder. Holloway said he was depressed because he could not engage in horseback riding, fishing, or weightlifting, activities he was involved in before the accident. He also lost forty pounds after the accident and at the time of trial had only regained ten. Holloway also said that he had problems bending, lifting and standing for periods of time. Holloway’s mother, Mildred R. Smith, corroborated her son’s testimony as to the pain he experienced and the limitations on his present activities due to his physical problems.
Our review of the general damages award is limited to whether the trial court abused its discretion. This inquiry resolves into a question of whether the award can be reasonably supported by the record. Carter v. Board of Supervisors, 459 So.2d 1263 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1248 (La.1985).
The plaintiff in Carter was a physically active 31-year-old woman whose partial disability (15%) of the right knee precluded her from engaging in the recreational activities previously enjoyed. Additionally, medical testimony indicated that the disability would heighten the possibility of future problems with the knee. A similar scenario presents itself at bar. Plaintiff has a fifteen percent permanent whole body impairment due to his back and a five to ten percent whole body impairment due to his shoulder. His and other testimony was that this has drastically altered his lifestyle. The trial court abused its discretion in awarding $90,000.00 in general damages. See Carter, 459 So.2d at 1267-68.
In having determined inadequacy in this award, we look to awards in similar cases for perspective,' remaining mindful that no two cases can be the same, and increase the award to the minimum that an exercise of reasonable discretion could produce. Perrette v. City of Slidell, 465 So.2d 63 (La.App. 1st Cir.1985).
In Efferson v. State of Louisiana through Department of Transportation and Development, 463 So.2d 1342 (La.App. 1st Cir.1984), writ denied, 465 So.2d 722 (La.1985), an award of $200,000.00 for past pain and suffering due to the fracture of the femur in both legs, a broken left ankle and broken left arm with a projected disability of ten to twenty percent in each leg, *866 was upheld. In Garrick v. Washington Parish, 440 So.2d 787 (La.App. 1st Cir. 1983), writ denied, 444 So.2d 1222 (La. 1984), an award of $225,000.00 general damages for fractures of the left tibia and fibula, and other bones in the ankle and foot, requiring insertion of pins and leaving a residual disability of thirty-two to thirty-five percent, was upheld.
We believe that $135,000.00 was the minimum award that could result from a reasonable exercise of discretion in this case, and therefore we amend the judgment of the trial court to increase the general damage award to $135,000.00.
TRIAL COURT’S FUTURE LOST WAGES AWARD
Holloway raises as error the trial court’s failure to award him future lost wages of $499,779.07, the amount to which he was entitled based on the testimony of his economics expert, Dr. John W. Chisholm. The trial judge in his oral reasons for judgment stated that he would not base the lost wages award on plaintiff’s testimony that he was earning $400.00 per week at the time of the accident because the plaintiff introduced no paychecks showing this amount nor were any income taxes or social security withheld from Holloway’s pay. The trial judge said, “the court will not assess lost wages based upon income that should be reported to the government.”
Holloway was born on May 26, 1965, and completed the ninth grade in education. His first job was at Loper Dozer where he made $30.00 per day performing heavy labor, and then he worked at Smith’s Dairy. In March, 1984, both Holloway and his employer Facundus testified that Holloway began working at Facundus Dozer and that he earned $400.00 per week, part of which was paid by check and part by cash. Both men testified that no income taxes or social security was withheld from Holloway’s pay. Five checks from Facundus to Holloway were introduced into evidence for the following amounts: April 6, 1984, $100.00; April 13, 1984, $255.00; April 23, 1984, $66.00; April 27, 1984, $132.00; and May 14, 1984, $300.00.[2] Facundus said that he kept records of the cash disbursed to Holloway for his worker’s compensation insurer; however, those records were not introduced into evidence. Both men said that Holloway’s job duties were to maintain and operate heavy equipment — heavy manual labor.
Holloway did not work from the time of the . accident until the end of June, 1986. At that time he began working for the William H. Smith Dairy for $500.00 per month. Two paychecks were introduced showing the following: $250.00, July 16, 1986, and $232.00, July 28, 1986. Holloway said that no taxes were paid on these earnings. According to Dr. Hagemann, Holloway was no longer able to perform heavy manual labor and should perform lighter work. Holloway testified that he tried to engage in heavy labor after his accident, but it caused him intense back pain.
Dr. Chisholm opined that Holloway had a work-life expectancy of 36.7 years at the time of trial. He based his economic loss calculations on Holloway’s testimony that he made $400.00 per week prior to the accident and $500.00 per month when he returned to work. Using a 6% discount rate and a Q% productivity increase, Dr. Chisholm found that Holloway’s earnings at $400.00 per week would have been $702,-392.37; Holloway's earnings at $500,00 per month would be $202,613.30, making Holloway’s loss of future earnings $499,779.07 at the time of trial.
On cross-examination, Dr. Chisholm also computed Holloway’s loss of earnings based on the five checks submitted from Facundus, which averaged $170.60 per week. While using a 6% discount rate with no 6% productivity increase, Dr. Chisholm found that Holloway’s loss of earnings would be $42,704.96.[3]
*867 According to the jurisprudence, “a claim for loss of earnings need not be proved with mathematical certainty, but only by such proof as reasonably establishes the claim.” Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151, 155 (1971). This may consist solely of the plaintiffs testimony, if it is found credible by the trial court, despite the plaintiff’s failure to introduce corroborative income tax returns. Jordan, 245 So.2d at 155. Derouselle v. Konecny, 468 So.2d 1382, 1384 (La.App. 1st Cir.1985).
We find that the trial court did err in considering Holloway’s employer’s failure to withhold income tax or social security. The trial court may not penalize a plaintiff’s failure to see that income tax or social security is withheld from his earnings by reducing his damages for lost earnings; this is a matter for the Internal Revenue Service. However, we can not say that the trial court erred in rejecting the testimony of Holloway and Facundus that Fa-cundus paid Holloway in cash the difference between his paycheck and $400.00 per week. “In reaching factual conclusions ..., the finder of fact need not accept all of the testimony of any witness as being true or false and may believe and accept a part or parts of a witness’ testimony and refuse to accept any part or parts thereof.” Der-ouselle, 468 So.2d at 1384. (Citations omitted).
We do find that the trial court abused its discretion in failing to award an amount consistent with Dr. Chisholm’s testimony as to future lost earnings when based on the weekly wage figure established by Holloway’s paychecks prior to the accident. See Vanzant v. New Orleans Public Service, Inc., 517 So.2d 1252 (La. App. 4th Cir.1987), writ denied, 519 So.2d 131 (La.1988). Accordingly, we amend the judgment to increase the trial court’s award from $30,399.00 to $42,704.96.
REDUCTION OF WAUSAU’S AWARD AGAINST FACUNDUS
Wausau contends that the trial court erred in reducing its claim for reimbursement for compensation benefits and medical expenses paid to Facundus by the 60% fault attributed to him. Wausau contends that because the accident occurred on May 21, 1984, and because Wausau began paying benefits thereafter as required by law, its right to reimbursement under LSA-R.S. 23:1101 vested at the time of the accident. For this reason, Wausau argues, the 1985 amendment of LSA-R.S. 23:1101 allowing reduction of the worker’s compensation insurer’s recovery in accordance with the employee’s degree of fault should not apply because it would deprive Wausau of vested rights.[4]
Wausau’s contention is without merit. In Thomas v. Hartford Insurance Company, 540 So.2d 1068 (La.App. 1st Cir.1989), and Scott v. Barclay’s American Leasing Service, Inc., 506 So.2d 823, 830 (La.App. 1st Cir.1987), writ denied, 508 So.2d 88 (La.1988), this Circuit reduced the recovery of the worker’s compensation insurers by the employees’ percentages of fault where the accidents occurred on June 28, 1983 and March 11, 1982 respectively. The court’s rationale was that “when comparative negligence affected the claimant’s tort recov *868 ery it also affected the reimbursement, since the reimbursement was limited to the amount of the judgment in the claimant’s favor.” W. Malone and H. Johnson, 14 Louisiana Civil Law Treatise, Workers’ Compensation Law and Practice § 371, pp 76-77 n. 39.5 (1988 pocket part). Based on the Thomas and Scott cases, we find that the trial court did not err in reducing Wau-sau’s award against Facundus by 60%.[5]
CREDIT AGAINST FUTURE WEEKLY WORKER’S COMPENSATION
Wausau urges that the trial court erred in failing to grant judgment in accordance with the joint stipulation, which read in pertinent part as follows:
Wausau Insurance Company is continuing to pay compensation and medical expenses to both plaintiffs and any judgment rendered in favor of either or both of these plaintiffs is to reflect that Wau-sau Insurance Company is to receive a credit for any future expenses or benefits it may have to pay to either Charles Facundus or Clark Holloway.[6]
Wausau is entitled to a credit against the judgment for sums actually paid by it in compensation to the plaintiffs in excess of the amounts that had been paid up to the time of commencement of the trial of the case; Wausau is further entitled to a credit against all future weekly worker’s compensation obligations accruing to the plaintiffs from Wausau against that portion of the judgment remaining after Wausau has received credit for sums actually paid. Derouselle, 468 So.2d at 1385; Johnson v. Harry Jarred, Inc., 391 So.2d 898, 908 (La.App. 2d Cir.1980). Reimbursement for worker’s compensation benefits and medical expenses paid and to be paid in the future is limited to the plaintiffs’ awards for lost wages and medical expenses. LSA-R.S. 23:1103; Brooks v. Chicola, 514 So.2d 7 (La.1987); Fontenot v. Hanover Insurance Co., 385 So.2d 238 (La.1980).
In order to conform the judgment rendered herein to our decision with regard to the credit to which Wausau is entitled, we amend same to add paragraph ten to the judgment as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT Employers Insurance Company of Wausau is hereby granted a credit against the judgment for lost wages and medical expenses hereinabove awarded to plaintiffs in the amount of all weekly worker’s compensation benefits and medical expenses paid by it to plaintiffs between trial date and the date of satisfaction of this judgment.
Additionally, against that portion of plaintiffs’ judgment for lost wages and medical expenses which remains after Employers Insurance Company of Wau-sau receives the credit previously described, Employers Insurance Company of Wausau shall have credit for all future accruing weekly worker’s compensation benefits and medical expenses owed by it to plaintiffs.
The credit to which Employers Insurance Company of Wausau is entitled against Facundus is subject to a 60% reduction in accordance with the percentage of fault attributed to Facundus.
For the reasons set forth above, the judgment of the trial court is amended in part, and as amended, affirmed. Costs of this appeal in the amount of $1,604.90 are assessed against DOTD.
AMENDED IN PART AND AS AMENDED, AFFIRMED.
CARTER, J., concurs in the result.
*869 COVINGTON, C.J., dissents in part and concurs in part with opinion.
EDWARDS, J., dissents with opinion.

. The factors to be considered in determining the percentages of fault are
'the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.’
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La. 1985). (Citation omitted).

. Two of the checks were made out to cash and were endorsed by Clark Holloway.

. Dr. Chisholm found that if Holloway had continued to make $170.60, his future earnings discounted at 6% would have been $131.946.30. Without the 6% productivity increase, Holloway’s future earnings at $500.00 per month would be $89,241.34. To arrive at the $42,-704.96, Dr. Chisholm subtracted $89,241.34 from $131,946.30.

. LSA-R.S. 23:1101 was amended in 1985 to read in pertinent part as follows:
§ 1101. Employee and employer suits against third persons; effect on right to compensation B. Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or becomes obligated to pay as compensation to such employee or his dependents. The recovery allowed herein shall be identical in percentage to the recovery of the employee or his dependents against the third person and, where the recovery of the employee is decreased as a result of comparative negligence, the recovery of the person who has paid compensation or has become obligated to pay compensation shall be reduced by the same percentage.
Prior to the amendment, LSA-R.S. 23:1101 read in pertinent part as follows:
§ 1101. Employee and employer suits against third persons; effect on right to compensation
Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to such employee or his dependents.

. As noted by Wausau in brief, our colleagues on the Second, Third and Fourth Circuits have not reached the same result. See Vallere v. Nicor Exploration Co., 512 So.2d 514, 519 (La. App. 3d Cir.1987); Williams v. American Crescent Elevator Co., 518 So.2d 1091, 1096 (La.App. 4th Cir.1987), writs denied, 521 So.2d 1189, 1190 (La.1988); Gadman v. State, through Department of Transportation and Development, 493 So.2d 661, 670 (La.App. 2d Cir.1986); See also Jacques v. Otis Elevator Co., 677 F.Supp. 444 (M.D.La.1987).

. We note that the minute entry for March 31, 1987 and oral reasons for judgment state that as to Wausau’s intervention, the court ordered judgment in accordance with the joint stipulation.